HON. YOUNG J. POPE, CHIEF JUSTICE.
HON. EUGENE B. GARY, ASSOCIATE JUSTICE.
HON. IRA B. JONES, ASSOCIATE JUSTICE.
HON. C. A. WOODS, ASSOCIATE JUSTICE.

## PACKARD & FIELD v. BYRD.

1. CONTRACTS—PUBLIC POLICY—CODE 1902, 2845.—If a contract to purchase shoes with grant of exclusive right to sell in a certain market is void as against public policy under Code 1902, 2845, the seller may recover the contract price for a bill of shoes sold at a subsequent time under original agreement, provided he can exhibit his case without relying upon the illegal part of the original transaction. Separable contracts defined.
2. REHEARING refused.

Before GARY, J., Greenwood, November term, 1904. Reversed.

Action by Packard and Field against G. A. Byrd. From judgment for defendant, plaintiffs appeal.

1—73

*Messrs. D. A. G. Outs* and *E. S. F. Giles,* for appellants, cite: *Was contract of sale void?* 8 L. R. A., 440; 55 S. C., 175; 9 L. R. A., 689; Clark on Con., 494-5; 1 Bail., 315; Chitty on Con., 678, 671, 701; 46 S. C., 15; 17 L. R. A., 113, note; Bish. on Con., secs. 628, 629; 3 Met., 581; 93 N. Y., 609; 3 Ency., 1 ed., 887, 885.

*Messrs. Sheppards & Grier,* contra, cite: *Court will not lend its assistance to enforce an illegal contract:* Code, 1902, 2845; 43 L. ed., U. S. C., 123. *Illustration in charge not applicable to case is harmless error:* 52 S. C., 488; 43 S. C., 206; 51 S. C., 222.

The opinion in this case was filed July 28, 1905, but remittitur held up on petition for rehearing until

November 7, 1905.   The opinion of the Court was delivered by

MR. JUSTICE JONES. This action was brought for the purpose of collecting an account for $140 for a bill of shoes purchased from plaintiffs by defendants, between the 24th day of October and the 22d day of November, 1902, and resulted in judgment for the defendant, from which is this appeal.   The answer denied the partnership of plaintiffs, and denied that he was indebted, as alleged in the complaint, but admitted that he had purchased the articles of merchandise referred to in the complaint and had refused to pay for the same.   Further answering, and by way of counterclaim, defendant alleged an agreement and its breach, to defendant's damage.   We quote the answer in so far as it refers to the alleged agreement, as the effect of said agreement upon plaintiffs' right of recovery is the principal question involved in this appeal:

"(c) That heretofore, on the         day of June, 1902, the said plaintiffs and this defendant, in consideration of defendant's purchasing of said plaintiffs a certain bill of

shoes and handling in his business as a merchant at Greenwood, S. C., plaintiffs' line of shoes, that defendant should have the exclusive sale of plaintiffs' goods at Greenwood, S. C., and should be the only person or firm to handle said line of shoes at said point as long as he wished to do so and would handle the same, and said plaintiffs then gave to this defendant the exclusive sale of these goods at Greenwood, S. C., for such time as he would handle the same, and the exclusive right to handle the same. (d) That defendant, acting upon the faith ·of this agreement, purchased and paid for said bill of shoes, and thereafter purchased and paid for other bills of shoes upon the faith of said agreement so entered into with the plaintiffs, and upon the faith of said agreement purchased the said bill of shoes mentioned in paragraph three of the complaint herein."  ·

The testimony is not set out in detail, but the "Case" states as follows: "The testimony of the plaintiffs tended to establish the allegations of the complaint and the indebtedness of the defendant in the sum of $140, and, further, that there had been considerable transactions by and between the parties from time to time, and that all bills and accounts had been paid promptly by the said defendant except the one mentioned in the complaint. When the defendant offered testimony going to establish the allegations of his counter-claim, plaintiffs' attorneys objected on the ground that the agreement, set out herein, was illegal and void as against public policy and in conflict with the provisions of section 2845 of the statutes, which objection was sustained and all testimony tending to establish said counter-claim ruled out. The defendant introduced testimony tending to show that the account sued on was for the purchase of shoes from the plaintiffs under a verbal agreement made between plaintiffs and defendant whereby it was agreed that defendant should have the exclusive sale of plaintiffs' line of shoes at Greenwood, and that no one else should be allowed to handle said line at said point, and

the plaintiffs would not sell or send any one else at Greenwood the said line of shoes, and that under this agreement the said bill of shoes was sold and delivered to the defendant by the plaintiffs, the defendant agreeing to buy his shoes in this line from the plaintiffs from time to time, as needed in his business as a merchant at Greenwood.

"The plaintiffs introduced testimony tending to controvert this testimony on behalf of the defendant, and that about the same time the defendant, Byrd, purchased the first bill of shoes from plaintiffs, they sold a bill of same line of shoes to Hall Brothers, a firm doing business at Anderson, S. C. That the order of Hall Brothers was accepted by the plaintiffs to be shipped to Anderson, and a part of the order was shipped out to them at Anderson, S. C., in cartoons, with the name of 'Hall Brothers, Anderson, S. C.,' stamped on the boxes. That about the 1st of November, 1902, Hall Brothers opened a branch store in Greenwood, S. C., to which branch store they removed a lot of these shoes, and ordered the plaintiffs to ship the balance of the order which was being manufactured for them for Anderson, S. C., to their branch store at Greenwood, which plaintiffs did. That Hall Brothers sold these shoes in Greenwood for less than Byrd was selling."

The main question arises upon exception to the following instructions to the jury: "I charge you, as a matter of law, that if, at the time the sale was made, it was a consideration of the contract of purchase made with the defendant to have exclusive sale of the articles in this market here, that that contract, under those circumstances, would be null and void, and could not be enforced in a court of law. Not because, gentlemen of the jury, that amount of money would not be due him, but it is on this principle, that when the law says a certain transaction is void, the Court closes its door to the litigant who undertakes to enforce a contract that is not in accordance with the law. * * * So I charge you further, as a matter of law, that if you find, as a matter of fact, that it was a part of the consideration of this

contract that the defendant was to have the exclusive control and monopoly of the sale of the articles furnished him, and they were imported from out of the State, and that was a part of his contract of purchase, that that contract was against the public policy of this State, and the plaintiffs could not come into Court and ask its aid to enforce a contract which he has made that is against the laws of the State; the Court would shut its doors to the enforcement of such a contract."

The objection urged against this charge is that the contract for the sale and purchase of the bill of shoes described in the complaint was not void, but only the attempted grant of the exclusive right to sell in Greenwood.

We are not to consider whether the agreement of June, 1902, was against public policy and void under section 2845, vol. 1, Code, 1902, which is directed against agreements, etc., in restraint of trade. The Circuit Court so charged, and no exception involves that question. The question before us is whether, if such an agreement is void, it should operate to defeat plaintiffs' recovery for the shoes sold and delivered. The charge of the Court was undoubtedly in accord with the general rule that no Court will lend its aid to enforce a claim based upon an illegal or immoral contract. *McConnell* v. *Kitchens*, 20 S. C., 430; *Gist* v. *Telegraph Co.*, 45 S. C., 363, 23 S. E., 143; but there are certain well-established exceptions to this general rule, and in 9 Cyc., 550, these exceptions are grouped under five heads: "(1) Where public policy requires the intervention of the Court; (2) where the parties are not *in pari delicto;* (3) where the law which makes the agreement unlawful was intended for the special protection of the party seeking relief; (4) where the illegal purpose has not been consummated; and (5) where the party complaining can exhibit his case without relying upon the illegal transaction." Plaintiffs' case falls within the fifth exception.

The counter-claim which the defendant sought to set up was based upon an executory agreement made in June,

1902, which the Court declared to be illegal, and, therefore, under the general rule stated, could not be enforced. But the plaintiffs' action is not based upon such agreement, nor in establishing plaintiffs' right to recover was it at all necessary to give evidence of or enforce any illegal agreement. Indeed, by the pleadings, after proof of the partnership of plaintiffs, their right to recover upon the cause of action stated stood practically admitted. Plaintiffs' right to recover rested upon the agreement, implied by law, to pay the price of goods belonging to plaintiffs which were sold and delivered to defendant at his request.

Involved also in this fifth exception to the general rule is the question whether the contract sought to be enforced is separable from the illegal agreement. In *Wooten* v. *Walters* (N. C.), 14 S. E. Rep., 735, Merrimon, C. J., gives a definition of entire and inseparable contracts in the following language, which is made the text in 7 Ency. Law, 95 : "A contract is entire and not severable when, by its terms, nature and purpose, it contemplates and intends that each and all of its parts, material provisions and the consideration are common each to the other, and interdependent. * * * A severable contract is one in its nature and purpose susceptible of division and apportionment, having two or more parts, in respect to matters and things contemplated and embraced by it, not necessarily dependent upon each other, nor is it intended by the parties that they shall be." The entirety or separability of a contract depends primarily upon the intention of the parties rather than upon the divisibility of the subject, although the latter aids in determining the intention. Where the consideration or promise is single, there is no difficulty in pronouncing the contract indivisible, and in declaring the whole void if there be illegality in the consideration or promise, as, for example, in *Woods* v. *McClaren,* 2 Brev., page *274, and *Massey* v. *Wallace,* 32 S. C., 149, 10 S. E., 937. But if, in this case, we treat the agreement of June, 1902, and the contract of purchase and sale of October, 1902, as practi-

cally one agreement, neither the consideration nor the promise is single. The plaintiffs agreed, (1) to sell and deliver to defendant a particular bill of shoes at certain prices, payable at a certain time; (2) to refrain from selling plaintiffs' line of shoes to any one else in Greenwood, S. C., as long as defendant would buy and handle the same. And defendant agreed, (1) to pay for the particular bill of shoes sold and delivered at the prices named, when due; (2) to handle plaintiffs' line of shoes in his business as merchant at Greenwood, S. C., and buy his shoes in this line from plaintiffs from time to time as needed. "Where the agreement consists of several promises based on several considerations, the fact that one or more of the considerations are illegal, will not avoid all the promises, if those which are made on legal considerations are severable from the others." 9 Cyc., 569. "Where there are several promises so that those which are legal can be separated from those which are illegal, the legal promises may be enforced. A lawful promise made for a lawful consideration is not invalid merely because an unlawful promise was made at the same time and for the same consideration." Clark on Contracts, 474.

The bill of shoes bought in June, 1902, under the agreement, was delivered and paid for, and several other bills of shoes were delivered and paid for between June and October, 1902. Each bill of shoes was separate and distinct, with stipulated prices, and payable at a stipulated time, and there was no evidence that the price of the shoes was in any degree enhanced by reason of the other agreements, so that there is no difficulty in apportioning the exact amount which defendant promised to pay for the shoes. The parties, by their course of dealings with each other, give some evidence of their intention that payment for each bill of shoes sold and delivered was not conditioned or dependent upon the performance by plaintiffs of their agreement to give defendant the exclusive right to handle plaintiffs' line of shoes in Greenwood, S. C. We think that the contract

sought to be enforced in this action is separable from the illegal agreement.

Perhaps the strongest case that may be cited contrary to the view herein announced is *Arnott* v. *Pittston and Elmira Coal Co.,* 68 N. Y., 558, 23 Am. Rep., 190. But in that case the Court made no attempt to separate the good consideration from that which was illegal, probably because in New York the Court will attempt separation only in those cases in which the party seeking to enforce the contract is not the wrong-doer. *Saratoga County Bank* v. *King,* 44 N. Y., 87, 9 Cyc., 566. The case of *McMullen* v. *Hoffman* (U. S.), 19 Sup. Court Rep., 839, cited by respondent, does not militate against the view herein announced. That case illustrates the general rule that no Court will lend its assistance in any way towards carrying out the provisions of an illegal agreement, where an action is brought in which it is necessary to prove the illegal contract in order to maintain the action. The plaintiff in that case sought an accounting of partnership profits, based upon a written partnership agreement, but the defendant plead and established that the partnership agreement was but a part of an illegal agreement, partly resting in parol, to secretly combine their interests and to put in bids upon public works, the bids to be known to each other, and the highest to be fictitious, and made only for the purpose of making an appearance of competition. The Court held that the contract was an entire one, and that the legal part could not be separated from the illegal part, and that to permit a recovery in that case would in substance be to enforce an illegal contract. In this case, no attempt is made to enforce an illegal contract, nor is any right or claim asserted which is inseparable from the illegal agreement. The case of *Trentman* v. *Wahrenburg* (Ind.), 65 N. E. Rep., 1057, is in point as sustaining the view announced by this Court.

The charge of the Court was erroneous, in that it left the jury no alternative but to find for defendant that an illegal agreement in restraint of trade constituted a part

of the consideration of the sale and purchase of the goods in question.

This conclusion practically disposes of the appeal and renders further consideration of the exceptions unnecessary.

The judgment of the Circuit Court is reversed, and the case remanded for a new trial.

PER CURIAM, November 7, 1905. After careful examination of the petition for a rehearing in this case, the Court is satisfied that no material question either of law or fact has been disregarded or overlooked.

It is therefore ordered, that the petition be dismissed, and the order heretofore granted staying the remittitur be revoked.