0240

Bill SCRUGGS, d/b/a Bill Scruggs' Landscaping, Respondent, v. QUALITY ELECTRIC SERVICES, INC., Appellant.

(320 S. E. (2d) 49)

Court of Appeals

*William E. DuRant, Jr.*, of *Schwartz & DuRant*, Sumter, *for appellant.*

*J. Edward Bell, III*, of *Weinberg, Brown & McDougall*, Sumter, *for respondent.*

Heard June 25, 1984.

Decided Aug. 28, 1984.

GARDNER, Judge:

This is a breach of contract action in which the jury awarded the plaintiff a $14,405 verdict. We affirm.

The issues on appeal are whether (1) the agreement between the parties was terminable at will, (2) the evidence supports the special verdict of the jury that the agreement was for services for the whole job and (3) the alleged submission of erroneous time statements was cause for termination.

The parties agreed to a special verdict form which was submitted to the jury. The form and verdicts of the jury as to the five interrogatories appear of record thusly:

1. Was an oral contract made between Plaintiff and Defendant? Yes

2. If there was an oral contract, was that contract terminable at will or was it a contract for the completion of the Shaw job? The contract was for the completion of the Shaw job.

3. If there was a contract for the completion of the Shaw job, did the Plaintiff breach the contract? No

4. If there was no breach by Plaintiff has Plaintiff proven any damages? Yes

5. If Plaintiff proved damages what is the amount of damages proven? $14,405.75

This case involves an agreement between plaintiff Scruggs and Electric Services by which Electric Services contracted with plaintiff Scruggs in relation to the trenching and landscaping of a project at Shaw Air Force Base, Sumter, South Carolina, for which Electric Services was the prime electrical contractor. Before completion, Electrical Services notified Scruggs that it would itself complete the trenching and landscaping; this suit followed. The pivotal issue of the case is whether Electric Services subcontracted to plaintiff Scruggs the entire job of trenching and landscaping work defined on a master blueprint of the project or whether plaintiff Scruggs was simply employed as an employee to work on the trenching and landscaping as long as Electric Services elected to continue the employment.

Plaintiff Scruggs was shown blueprints of the architectural plan for the Shaw Air Force project. Based upon these plans, he submitted a bid of $22 per hour for the backhoe and an operator; or for a tractor and leveling blade and an operator; or for a bulldozer and operator and $6 per hour for a roller compactor; plaintiff Scruggs also quoted $3.50 per yard for sand clay. He testified that the first three quoted prices were about $13 per hour less than he normally bid and that he reduced them in order to be successful in his bid for the entire job delineated on the blueprint. He then testified that he understood that he "had the whole contract for the duration of the job." Mr. Jack S. Keith, an employee of Electrical Services, who was privy to the negotiations and the making of the contract, testified that Electrical Services accepted the bid. Additionally, Keith testified that he, in nego-

tiating the contract, told plaintiff Scruggs that it would be for the entire job. Viewing the evidence in a light most favorable to plaintiff Scruggs, we affirm the verdict of the jury that the contract was for the entire "Shaw job."

Electric Services also argues the contract was severable, citing *Columbia Architectural Group, Inc. v. Barker*, 274 S. C. 639, 266 S. E. (2d) 428 (1980); *Packard and Field v. Byrd*, 73 S. C. 1, 51 S. E. 678 (1905). This line of argument was vigorously urged before the trial judge and he ruled that the issue was one for "the triers of the facts." In so doing the trial judge was correct because these authorities hold severability is a matter of intent. Intent is a state of mind, a factual matter, one which must be determined by the jury; however, we are unable to determine this issue because the jury charge is not of record. It is the responsibility of appellant Electric Services to include in the transcript of record all that is necessary for complete determination by this court of the issues presented on appeal. If the trial judge fully charged the law of severability, and then submitted the question of intent to the jury, then we hold that the record discloses sufficient evidence to support the verdict for plaintiff Scruggs. On the other hand, if the trial judge did not charge the jury the law of severability, then it cannot be considered on appeal because of the failure to include the charge in the transcript of record. *Gunter's Island Hunting Club of Horry County, S. C., et al. v. Hucks, et al.*, S. C. App., 317 S. E. (2d) 470 (1984).

Electric Services next argues that the contract was terminable because there was no independent consideration, citing *Orsini v. Trojan Steel Corp.*, 219 S. C. 272, 64 S. E. (2d) 878 (1951) and *Shealy v. Fowler*, 182 S. C. 81, 188 S. E. 499 (1936). These cases apply to employment contracts for individual services and are not applicable to a situation, such as the one presented, of a contract for an entire job involving not only personal services but the use of various pieces of vehicular machinery. This argument has no merit and we so hold.

We next address the issues of the alleged erroneous time sheets. Electric Services cross-examined plaintiff Scruggs by showing original time sheets which indicated erroneous claims, and on cross-examination Scruggs simply replied that the entries were mistakenly made. But during an overnight recess, plaintiff Scruggs had an oppor-

tunity to compare the statements offered by Electric Services with his own carbon copies and found the copies free of the alleged erroneous claims. These carbon copies in reply were introduced in evidence by plaintiff Scruggs. Interrogatory 3 of the special verdict form was included for the purpose of allowing the jury to determine if plaintiff Scruggs had submitted erroneous time sheets; the jury found for plaintiff Scruggs on this question. This finding has evidentiary support and will not be disturbed on appeal.

When a special verdict form is submitted to the jury, the special findings of fact, which have evidentiary support and which are material to the case, are binding on the parties. *A fortiori*, such a verdict is binding on a party with whose consent, as in this case, the question was submitted to the jury. 89 C.J.S. *Trial* § 571.

For the reasons given, the judgment below is

Affirmed.

SANDERS, G. J.,and GOOLSBY, J., concur.